C. ITOH & CO. (AMERICA), INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 78-7-01334

Before MALETZ, *Senior Judge.*

*Opinion and Order*

(Dated February 10, 1983)

*Serko & Simon (David Serko* on the briefs) for the plaintiff.
*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Jerry P. Wiskin* on the brief) for the defendant.

MALETZ, *Senior Judge:* In this drawback action plaintiff C. Itoh & Co. (America), Inc. (Itoh) seeks a refund of duties paid upon exported merchandise which allegedly failed to conform to specifications. Itoh brought this action following the denial of its claim for drawback by the Customs Service and has now moved for summary judgment. Defendant has cross-moved for summary judgment or, in the alternative, to dismiss on the ground that Itoh's claim for administrative relief was untimely.

The controlling statutory and regulatory provisions are contained in sections 313(c) and 520(c) of the Tariff Act of 1930, 19 U.S.C. §§ 1313(c) and 1520(c) (1970),[1] respectively, and 19 C.F.R. § 173.4(c) (1975).[2] Itoh alleges that errors resulting in the denial of drawback originated in the liquidation of the entries, thereby giving Itoh one year from the date of liquidation to file a claim for drawback under 19 C.F.R. § 173.4(c) (1975). It further argues that two letters, one dated October 1, 1975 and another dated June 25, 1976, when considered as a whole, constitute a timely filing for drawback under 19 C.F.R. § 173.4(c).

For the reasons that follow the court concludes that the errors, if any, did not originate in the liquidation of the entries, and that

---

[1] 19 U.S.C. § 1313(c) provided:
*Merchandise not conforming to sample or specifications*
(c) Upon the exportation of merchandise not conforming to sample or specifications . . . upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.
19 U.S.C. § 1520(c) provided:
(c) Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—
(1) A clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and mainfest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, or transaction, or within ninety days after liquidation or exaction when the liquidation or exaction is made more than nine months after the date of the entry, or transaction; . . .

[2] 19 C.F.R. § 173.4(c) provided:
(c) *Limitation on time for application.* A clerical error, mistake of fact, or other inadvertence meeting the requirements of paragraph (b) of this section, must be brought to the attention of the district director:
(1) Within 1 year after the date of entry, or other transaction (including liquidation, reliquidation, or exaction) if the error, mistake or fact, or other inadvertence is in the entry, or other transaction (including a liquidation, reliquidation, or exaction), or
(2) Within 90 days after liquidation or exaction when the liquidation or exaction is made more than 9 months after the date of entry, or other transaction, *except that in cases where the error originates in the liquidation, reliquidation, or exaction, the 1-year limitation provided for in subparagraph (1) of this paragraph shall apply.* [Emphasis added.]

Itoh's claim for drawback under 19 C.F.R. § 173.4(c) was thus untimely. Accordingly, defendant's motion to dismiss is granted.

## I

The history of the case begins in 1971 when, in August and September of that year, Itoh imported brass-plated wire tire cord from Japan. That merchandise was ultimately returned to Japan in December 1971 because it allegedly failed to meet buyer specifications. At the time of exportation four drawback entries were filed with Customs. More than three years later, these four entries were liquidated on June 27, 1975 without a drawback allowance.

In essence three grounds were advanced by Customs for disallowing drawback: (1) the merchandise was not returned to Customs' custody; (2) an export bill of lading was not filed within two years after the merchandise was exported; and (3) Itoh failed to establish that the merchandise did not conform to specifications. It is undisputed that these grounds were known to both Itoh and Customs well before liquidation. The record reflects that they were the topic of discussions between Itoh and Customs on at least two separate occasions, once one month immediately preceding liquidation and the other four months prior thereto. Indeed, liquidation was twice postponed at Itoh's request in order to afford it the opportunity to substantiate that each of the grounds for disallowing drawback had in fact been satisfied.

On October 7, 1975, the Regional Commissioner of Customs in Chicago received a letter from Itoh's customhouse broker dated October 1, 1975 regarding the drawback entries. In that letter Itoh's broker explained that the merchandise had been transferred to Baltimore from Cleveland without the broker's knowledge and was then exported to Japan from Baltimore on December 9, 1971. The letter did not protest Customs' disallowance of drawback, nor did the broker petition for such drawback. This letter was apparently treated as a request for reliquidation by the Regional Commissioner's office which, on October 31, 1975, denied this request on the three grounds previously mentioned. Itoh did not respond to Customs' October 31 letter until nearly eight months later when, on June 25, 1976, it sent Customs a letter—received June 25, 1976—which for the first time alleged errors in the liquidation and expressly protested the disallowance of drawback. This letter was deemed an untimely petition for drawback by Customs pursuant to 19 U.S.C. § 1520(c). This lawsuit then followed.

With this background the court turns first to Itoh's contention that the errors complained of originated in the June 27, 1975 liquidation.

## II

Under 19 U.S.C. § 1520(c) and 19 C.F.R. § 173.4(c) the limitation periods for filing an application to correct a clerical error, mistake

of fact, or other inadvertence are strictly circumscribed. Pursuant to those two provisions, a petitioner alleging such error must file its claim with Customs within one of three time periods: (1) within one year of the date of entry of the merchandise, (2) within ninety days of the date of liquidation of the entries if the liquidation occurred more than nine months after the date of entry, or (3) within one year of the date of liquidation if the error resulting in the denial of the claim for drawback "originates in the liquidation."

The liquidation which is the focus of this action occurred more than three years after the merchandise was entered. Itoh concedes that no claim for drawback was presented to Customs within ninety days of the date of liquidation of the entries as required by 19 U.S.C. § 1520(c)(1). Consequently, in order to avail itself of the more generous one-year-of-liquidation period contained in 19 C.F.R. § 173.4(c), it is incumbent upon Itoh to demonstrate that the alleged errors originated in the liquidation.

Instructive on the meaning of error which originates in the liquidation are two recent opinions of this court, *Lester Engineering Co. v. United States,* 3 CIT 236 (1982), and *Adorence Co. v. United States,* 3 CIT 81, 539 F. Supp. 1216 (1982), *aff'd,* No. 82-25 (Fed. Cir. Dec. 10, 1982). In *Lester Engineering* the plaintiff, who had presented a drawback claim some eight months after liquidation, alleged that the entries were liquidated using an excessive value which had been employed for the first time at liquidation. Inasmuch as the Government—the moving party on a motion to dismiss—failed to establish otherwise, the court concluded that the alleged error originated in the liquidation and, accordingly, that the plaintiff's drawback claim was timely filed under 19 C.F.R. § 173.4(c).

The *Adorence* case, while not directly involving 19 C.F.R. § 173.4(c), did address the question of when errors originate in a liquidation. There the plaintiff had placed incorrect value information on the entry papers which were in turn used by a Customs appraising official at the time of liquidation. The plaintiff argued that the use of the wrong information by Customs at liquidation was an error separate and distinct from the earlier submission of the wrong information on the entry by the plaintiff. In granting the Government's motion to dismiss, the court observed that

> the error occurred only once, specifically when incorrect values were placed on the entry papers by plaintiff. The later uses of the erroneous data do not constitute new errors but rather are the unavoidable and normal manifestations of the original error. If plaintiff's reasoning was correct, there would be no reason for the statute to specify any events prior to the liquidation because all errors would eventually be incorporated or accumulated in the liquidation and constitute errors at that final stage. By specifying certain events the statute recognizes that errors are discrete events and that their occurrence can be fixed in time and associated with one or the other of the steps in the administrative process of importation.

*Id.* at 82, 539 F. Supp. at 1217. *Lester Engineering* and *Adorence* thus teach that when determining whether or not an error originated in a liquidation, the proper focus is on that point in time when the alleged error was first committed. If the error antedated the liquidation, then the error did not originate there, even if that error is repeated at the time the entries are liquidated.

In the present action it is uncontroverted that if there were any errors, those errors were brought to Itoh's attention well in advance of liquidation. Customs and Itoh discussed the defects which gave rise to the purported errors four months and then again one month prior to liquidation. Each of the errors complained of by Itoh occurred, if at all, at a time predating liquidation and are not, therefore, errors originating in the liquidation.

Thus, inasmuch as the errors did not originate in the liquidation, Itoh had ninety days from the date of the June 27, 1975 liquidation within which to present a claim for drawback. *See* 19 U.S.C. § 1520(c) (1970). On this score, regardless of how its letter to Customs of October 1, 1975 is characterized, there is no dispute that Itoh failed to file or present a drawback claim within the requisite ninety-day period provided for under section 1520(c).

In sum, the court finds as untenable Itoh's assertion that the errors originated in the liquidation, thereby allowing it one year from the date of liquidation upon which to file a drawback claim pursuant to 19 C.F.R. § 173.4(c) as then in effect.

## III

Even assuming *arguendo* that the alleged errors originated in the liquidation, the court would still be compelled to dismiss Itoh's complaint on the basis that it failed to file a claim for drawback within one year of the date of liquidation. Of relevance here are the two letters which, Itoh contends, if integrated constitute a timely petition for drawback.

The first of these two letters was sent by Itoh's customhouse broker on October 1, 1975, and received by Customs on October 7, 1975, 102 days after the entries were liquidated.[3] That letter stated *in toto* as follows:

> We make reference to Cleveland drawback entries 72-107252/5 for the account of C. Itoh & Co. (America) Inc. At the time of intended exportation in December of 1971 this freight was to be loaded aboard the steamer Muneshima Maru. Unfortunately, due to factors beyond our control and without our knowledge as well as the importer's, the carrier elected to transfer this merchandise to Baltimore for loading aboard the steamer France Maru which departed December 9, 1971. Attached is a statement from Customs in Baltimore indicating

---

[3] The periods within which to file a drawback claim are tolled upon receipt of the claim by Customs. Under 19 U.S.C. § 1520(c) (1970) and 19 C.F.R. § 173.4(c) (1975) the error had to be "brought to the attention of" the Customs Service within ninety days or one year after liquidation, respectively.

that the merchandise was physically exported along with a photostatic copy of the outward foreign manifest showing this merchandise as well as documentation from the importer of record as well as the steamship line.

Will you kindly review this matter and advise whether drawback can be allowed or if there is additional documentation that you request in order that this matter may be correctly disposed of.

No allegation of an error which occurred in connection with liquidation of the entries is to be found in this document. Nevertheless, treating this letter as a request for reliquidation, Customs denied it as untimely. On June 25, 1976, Itoh's counsel sent a letter to Customs claiming errors in the liquidation of those entries. That letter was received by Customs on June 29, 1976—a year and a day after liquidation.

Itoh maintains that even though this June 25 letter arrived one day after the anniversary date of the liquidation, it should nonetheless be considered a supplement to its October 1, 1975 letter and, therefore, a timely claim for drawback pursuant to 19 C.F.R. § 173.4(c). This contention the court must reject on at least two grounds. First, the October 1 letter is inadequate on its face to serve as a petition or claim for drawback. More important, if the court accepted Itoh's argument it would in the process effectively eliminate the one-year statute of limitations contained in 19 C.F.R. § 173.4(c). For as a practical matter any correspondence submitted more than ninety days but less than one year from the date of liquidation expressing disappointment with a liquidation could be then used months or even years after the liquidation to bootstrap any importer's claim to correct an alleged error or mistake. Not only would such a result subvert the purpose of limitation periods in general, it would undermine altogether the statutory and regulatory scheme embodied in 19 U.S.C. § 1520(c) and 19 C.F.R. § 173.4(c).

## IV

In view of this court's conclusion that the alleged errors complained of by Itoh did not originate in the liquidation and that Itoh's claim for drawback was in any event untimely, plaintiff's motion for summary judgment is denied and defendant's cross-motion to dismiss is granted.